UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Crim. No.  23-CR-00025 (BAH) |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL BLACKSON,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing.  For the reasons herein, the United States requests that the Court sentence the Defendant to a period of **46 months** of incarceration.  The government further requests that the Court impose a period of **three years** of supervised release.  The government is also seeking the forfeiture of any firearms and ammunition involved in or used in the knowing commission of this offense, including but not limited to a Glock 23, .40 caliber pistol, serial number ABNG705, and 19 rounds of ammunition.  In addition, the government is requesting that the Defendant be ordered to pay $ 100 per felony conviction to the Clerk of the United States District Court for the District of Columbia.  In support of this sentencing, the government states the following.

### FACTUAL AND PROCEEDURAL BACKGROUND

*Procedural History*

On January 10, 2023, the government filed a complaint against the defendant, for the Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).  On

January 24, 2023, the defendant was indicted on one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).  The Indictment provided notice to the defendant that the government intended to seek forfeiture as part of the sentence. Rule 32.2(a) of the Fed. Rules of Crim. Proc.  Specifically, the defendant shall forfeit to the United States any firearms and ammunition involved in or used in the knowing commission of the offense, including but not limited to a Glock 23, .40 caliber pistol, serial number ABNG705, and 19 rounds of ammunition.

*Factual Background*

On January 9, 2023, Metropolitan Police Department ("MPD") Officers were dispatched to the intersection of South Capitol St. SE and Halley Place, in Washington D.C to attend to an unresponsive motorist.  MPD Officers arrived at the location in a marked vehicle and saw a running vehicle stalled in the center lane of South Capitol Street for a prolonged period.  MPD Officers parked behind the stopped vehicle and activated the emergency lights to provide more visibility and safety.



The Defendant was observed slumped over the wheel of the vehicle and appeared to be sleeping. The dashboard of the vehicle displayed the letter 'D' for 'Drive,' and the defendant's foot was on the brake. Noticeably, there was a bulge in the defendant's pants, and he had both hands resting over it.

For approximately ten minutes, officers knocked on the window, yelled at the defendant, knocked on the roof of the car, flashed their flashlights in his face, and even tried shaking the vehicle to no avail. The defendant remained unresponsive. When the defendant regained some consciousness, he brought his foot off the brake and the car moved forward, away from the officers and then stopped. The officers reapproached, and the defendant moved the vehicle forward again before stopping. Finally, the defendant complied with officer's orders and removed himself from the vehicle.

The officers conducted a protective pat down. The officer lifted the defendant's shirt and removed a firearm from the defendant's person. The firearm was loaded with an extended magazine holding nineteen rounds of ammunition.



The firearm appeared to be fully functional and was designed to expel a projectile by the action of an explosive. A WALES/NCIC inquiry was conducted on the firearm, revealing that the firearm was unregistered. The firearm and ammunition in this case were manufactured outside of the District of Columbia, and therefore traveled in interstate commerce.

While the defendant was in custody, a criminal history check was conducted, and it revealed that he had prior felony convictions for Murder II While Armed, Possession of a Firearm During a Crime of Violence, and Carrying a Pistol without a License Outside the Home/Business, in the Superior Court for the District of Columbia under case number 2005-FEL-003672, where he was sentenced to 33 years in prison and 12 months of supervised probation. The defendant had additional felony convictions for Unarmed Carjacking While Armed and Carrying Pistol without a License Outside the Home/Business in Superior Court of the District of Columbia under case number 2005-FEL-002436 and was sentenced to 11 years and 8 months in prison, followed by three years supervised release. As having served more than a year in prison, the defendant was aware at the time of his arrest in this case that he had prior convictions for crimes punishable by a term of imprisonment exceeding one year.

Post-arrest investigation revealed that the vehicle was registered to the defendant and there were no other occupants in the vehicle at that time that could claim ownership of the firearm and ammunition. Even more significantly, in a *Mirandized* interview subsequent to arrest, the defendant confessed to purchasing and possessing the firearm and ammunition.

On July 14, 2023, the defendant pled guilty as to Counts 1 of the Indictment. Pursuant to the plea agreement, the government agreed that the United States Attorney's Office for the District of Columbia would not further prosecute the conduct set forth in the Statement of Offense and would agree to cap its allocution at the top of the applicable guidelines range, as determined by the Court.

**DISCUSSION AND RECOMMENDATION**

I.     **Generally Applicable Legal Principles**

Though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated."). Moreover, the Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. *United States v. Flores*, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation. As noted:

> In the post-*Booker* world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may

5

enter into the determination of the applicable guideline
sentencing range." U.S.S.G. § 1B1.3, Commentary, Background

## II.   Defendant's Sentencing Guidelines Calculation

### *Criminal History*

The government concurs with the United States Probation Office's ("Probation") assessment of the defendant's criminal history as set forth in the Final Presentence Investigation Report ("PSR") at pages 7 through 9 (ECF No. 41). As reflected in the PSR and in the table below, the total criminal history score is four 4,[1] establishing a Criminal History Category of III.

The relevant criminal history is as follows:

| Offense of Conviction | Case No. | Date of Conviction | Sentence* | Disposition (Points) |
|---|---|---|---|---|
| Murder II While Armed | 2005-FEL-003672 | 11/3/2006 | Resentenced to 24 Years ESS all but time served as part of IRAA order, Supervised Probation 12 Months | 1 |
| Possession of Firearm During a Crime of Violence | 2005-FEL-003672 | 11/3/2006 | 7 Years, Supervised Probation 12 Months | |
| Carrying a Pistol Without a License Outside Home/Business | 2005-FEL-003672 | 11/3/2006 | 2 years, Supervised Probation 12 Months | |

---

[1] The government previously argued and calculated that the criminal history score would be at an 8 and Category IV. However, the 2023 United States Sentencing Guidelines that go into effect on November 1, 2023, subsequent to the submission of this memorandum but prior to the sentencing hearing on November 9, 2023, will alter that calculation. Section 4A1.1(d) has been deleted and the two criminal history points that a defendant could have received for committing their crime while on probation or supervised release has been deleted (*See* § 4A1.1(d)). In its place, the new provision gives the defendant one extra criminal history point if he/she already has seven criminal history points, and is on probation, supervised release, etc. *See* § 4A1.1(e) (2023).

Additionally, the government concedes that the conviction for Murder II While Armed in 2005-FEL-003672, should receive one disposition point because the prior convictions are treated as a single sentence under the guidelines. The offenses were not separated by an intervening arrest and the defendant was sentenced to both matters on the same day. However, the Murder II conviction is a crime of violence and one additional point applies under § 4A1.1(e).

6

| Unarmed Carjacking | 2005-FEL-002436 | 11/3/2006 | Aggregate 140 Months and 3 Years Supervised Release [resentenced to time served as part of IRAA resentencing in May 2022] | 3 |
| --- | --- | --- | --- | --- |
| Carrying a Pistol Without a License Outside Home/Business | 2005-FEL-002436 | 11/3/2006 | Aggregate 140 Months and 3 Years Supervised Release [resentenced to time served as part of IRAA resentencing in May 2022] | |
| Threats to Do Bodily Harm | 2005-FEL-002436 | 11/3/2006 | Aggregate 140 Months and 3 Years Supervised Release [resentenced to time served as part of IRAA resentencing in May 2022] | |

*Total Offense Level*

The government and Probation concur that the Final Offense Level is **19.**

All parties agree that the following Sentencing Guidelines apply:

**Count One**

| | | |
| --- | --- | --- |
| U.S.S.G. § 2K2.1(a)(3) | Base Offense Level | **22** |
| | Acceptance of Responsibility | **-3** |
| | Total | **19** |

The base offense level for Count One is 22 under U.S.S.G. § 2K2.1(a)(3) because, as discussed above, the defendant committed this offense after sustaining a conviction for a crime of violence in the District of Columbia Superior Court (Case No. 2005-FEL-002436). Finally, three (3) levels are deducted for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a), (b).

The aggregate total exposure for the defendant before the plea agreement equals to an imprisonment range is **51-63 months of imprisonment.** After the plea agreement, and the Acceptance of Responsibility, the sentencing guidelines decrease to **37-46 months of imprisonment.** As further detailed below, the government recommends a sentence of 46 months

7

of imprisonment.

### III. Sentencing Recommendation

The government respectfully submits that the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a) support a sentence of 46 months. The government further recommends that the Court impose a three-year term of supervised release. In addition, the government is requesting that the defendant be ordered to pay $100 per a felony conviction to the Clerk of the United States District Court for the District of Columbia.

When determining the appropriate sentence, the district court should consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *United States v. Rita,* 127 S. Ct. 2456, 2463-65 (2007). The listed factors in 18 U.S.C. § 3553(a) include the following: 1) The nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences available; (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims.

**A. Nature and Circumstances of the Offense**

The nature and circumstances of this offense are serious and warrant a significant sentence. As a threshold matter, the defendant's possession of a loaded handgun was an inherently dangerous act that placed the community at risk. *See, e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great

potential to escalate into violence"). In short, people carry guns because they intend to use them.

Unlawful gun possession is so problematic—particularly by someone who has the defendant's criminal history and who has proven he is willing to use a firearm to harm another— because the number of violent crimes committed with guns in the District continues to rise: in the past three years (between October 26, 2020, and October 26, 2023), violent crimes committed with a gun went up by 2,606 compared to the previous three years. *Crime Cards*, Metro. Police Dep't, https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/3:years/citywide:heat (last visited Oct. 26, 2023). Similarly, the homicide rate has skyrocketed in recent years. *See* Peter Hermann, *Homicides are falling in many big cities. In D.C., they're rising.*, Wash. Post (August 19, 2023, 9:00 a.m.) https://www.washingtonpost.com/dc-md-va/2023/08/19/dchomicides-rising-major-cities/ ("But more than halfway through this year, killings in the District are surging toward numbers not seen in two decades"). The past two years have seen the highest homicide rates since 2003: in 2022, there were 203 homicides, and in 2021, 226 homicides. *See District Crime Data at a Glance: 2023 Year-to-Date Crime Comparison*, Metro. Police Dep't, https://mpdc.dc.gov/page/district-crime-data-glance (last visited Oct. 26, 2023). And 2023 is on track to have the highest homicide rate in over twenty years: there have already been at least 227 homicides in 2023, a 34% increase from this time last year. *Id.* By comparison, in 2012, there were only 88 homicides. *Id.*

In this instance, the defendant admitted to illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband, while out in public, and unconscious in the driver's seat of a running vehicle, posing an inherent risk of danger to the community. The possession of loaded firearms by convicted felons is extremely dangerous and the increase in urban shootings has shown the negative impact that the unregulated flow of firearms can have on

a community.  The firearm was a semiautomatic Glock, loaded with 19 rounds of ammunition in an extended magazine and was ready to use.  An extended magazine allows the firearm to carry more ammunition than the firearm was originally manufactured to carry, thereby increasing its potential to do greater harm.  Even though the defendant did not fire or use the weapon, the effect of having an illegal firearm in a household or on the street is deleterious, and can profoundly affect relationships between families, friends, enemies, and law enforcement.

Furthermore, the defendant, despite being unable to legally purchase or receive firearms, obtained a firearm.  The defendant could not have purchased the firearms legally and therefore had an illegal source for firearms. Firearm registration and possession laws exist to protect the community.  In this case, those laws were clearly broken by someone that demonstrated an inability or unwillingness to abide by our District's firearm laws.  The defendant has repeatedly sought out firearms, and his prior convictions and a lengthy sentence have so far been insufficient to deter him from possessing loaded guns.

While the defendant's crime did not result in any direct violence against another, unlawful possession can lead to dangerous consequences, thereby underscoring the need to take such crimes seriously.  In view of the nature and circumstances of this offense, a sentence of 46 months' imprisonment – a substantial sentence within the applicable guideline range – is warranted.

### B. The History and Characteristics of the Defendant

The defendant's criminal history and the timeline of this offense strongly supports a sentence at the highest end of the applicable guidelines.  The defendant's criminal history is indicative of a violent, recidivist offender – including prior convictions for second degree murder while armed, carjacking, and related firearms offenses – making his unlawful possession of a loaded firearm especially troublesome.

As it relates to the second-degree murder, on June 30, 2005, the defendant was arrested for the murder of Lavelle James, a 16-year-old who was killed by a single gunshot wound to the head on April 24, 2005.  Earlier that night, there was an altercation at a night club between two groups of people.  Club security deescalated the altercation and the participants left the area and went to their vehicles.  A witness on scene relayed that the victim was riding in the passenger seat of one of the vehicles.  At some point, another vehicle, which held the defendant, pulled up to the victim's vehicle, and the defendant shot into the passenger's seat, striking the victim in the head.  The case proceeded to a jury trial and the defendant was convicted on all counts, to include: (1) one count of Second-Degree Murder, (2) one count of Possession of a Firearm During a Crime of Violence, and (3) one count of Carrying a Pistol without a License.  On November 3, 2006, the defendant was sentenced to 33 years imprisonment.  A term of supervised release of five years was also imposed.

On April 29, 2005, only several days after shooting and killing Lavelle James, the defendant was arrested after MPD Officers received word that a man committed an armed carjacking off Florida Ave., Washington D.C., N.W.  The victim relayed that the defendant opened the driver's side door while displaying a firearm and ordered the victim to exit the vehicle.  The victim complied and the defendant drove away in the stolen car with another unidentified person occupying the passenger seat.  MPD broadcast a lookout for the stolen vehicle.  Upon spotting the vehicle, which then contained three individuals, MPD Officers attempted to make a traffic stop; however, the defendant did not comply.  After a short foot pursuit, Officers apprehended the defendant while the other two individuals escaped.  The defendant pled guilty to: (1) one count of Carjacking; (2) one count Carrying a Pistol without a License; and (3) one count Threats to do Bodily Harm.  On November 3, 2006, the Honorable

Brian Holeman sentenced the defendant to an aggregate term of 140 months, followed by three (3) years' supervised release. The sentence was to run consecutively to any other sentence, to include the sentence in the previous conviction. In total, the defendant was sentenced to a term of imprisonment of 44 years and 8 months.

After the defendant successfully filed a motion to reduce his sentence based on the Incarceration Reduction Amendment Act, the defendant was released from the Federal Bureau of Prisons on May 13, 2022. Approximately 8 months later, the defendant was found with a loaded firearm in this instant case. The true devastating irony is that during the time he was released from prison, the defendant was working for Cure the Streets DC as a violence interrupter. As discussed in the PSR, Page 12 – 13, the defendant was responsible for mediating disputes to prevent gun violence. The defendant was working to reduce violent firearm crime, while also contributing to it. Given his criminal record, and this employment, the defendant must have known the profoundly dangerous nature of firearms and the injurious results gun violence has on our community. And armed with this knowledge and experience, the defendant still chose to illegally carry a firearm with an extended magazine on his person.

### C. The Need for the Sentence Imposed

In 2005, the defendant committed two grave, significant acts of violence against two different victims in 2005. In 2022, under the Incarceration Reduction Amendment Act, the defendant's original sentence was significantly reduced by almost half, and he was released from prison. The defendant had been given an opportunity, had been trusted by a court, and betrayed that faith by committing this instant offense less than a year after he was released. The government believes that a jail sentence of 46 months of imprisonment is both necessary and sufficient to remove the defendant from the community, send a message to the defendant, and serve as a reminder to the

community-at-large that firearm crimes, to include the illegal possession of firearms by prohibited persons, will not be tolerated in this District.

## CONCLUSION

For the foregoing reasons, the government respectfully submits that a sentence of 46 months of imprisonment followed by three years of supervised release serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. No. 481052

*/s/Christine Pattison*
CHRISTINE PATTISON
MI Attorney No. P82979
Special Assistant United States Attorney
Federal Major Crimes Section
601 D Street NW
Washington, D.C. 20530
(202) 815-4063